UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 1 0 2023

TAMMY H. DOWNS, CLERK

By ___ DEP CLERK

Nicholas A. Ross,
Petitioner                            )
                                      )
                                      )
                                      )
v.                                    )   Case No.: To Be Assigned
                                      )
                                      )
Warden Chad Garrett,                  )   2:23-cv-00176-LPR-JTR
Respondent                            )
------------------------------------------------------------------

## MEMORANDUM SUPPORTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Nicholas Alexander Ross, Pro Se, presents the following to assist this Honorable Court in assessing the relative merit of the grounds listed in the respective 2241 petition for writ of Habeas Corpus and the validity of the relief requested.

### 1. Regarding Grounds One And Two

> "In order to carry out the requirement ... that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment ... for all eligible prisoners ..." - 18 U.S.C. § 3621(e)(1) and (e)(1)(c)

Ross is a prisoner. Ross also has a documented history of substance abuse prior to imprisonment. FCC Forrest City Low has available appropriations to operate a residential substance abuse program, and takes in new participants every quarter. Ross is eligible  to be provided treatment because he has demonstrated a wish or desire (will) to be a member of the program, 3621(e)(5)(b)(ii), and the Bureau of Prisons has determined that he has a substance abuse problem, 3621(e)(5)(b)(i).

Ross was expelled from FCC Forrest City Low's residential substance abuse program (RDAP) on November 17, 2022. Ross formally

appealed the decision on 12/6/2022, alleging deviations from relevant policy, and asked to be put back into the program. Ross received a response on 1/6/2023 in which he was ultimately told "[y]ou are not being readmitted into RDAP." Further appeals made by Ross, which consistently argued that he was never given an Incident Report or Disciplinary Hearing for the alleged misconduct, were met by further denials for relief.

As a result of the expulsion and the refusal to readmit him into the RDAP, Ross is unable to participate in "residential substance abuse treatment" defined in 18 U.S.C. § 3621(e). Ross is not being provided treatment.

However, "the Bureau of Prisons shall [] provide residential substance abuse treatment [] for all eligible  prisoners," § 3621 (e)(1) and (e)(1)(c).

Respondent may be inclined to argue that Ross is not an eligible  prisoner because the Bureau of Prisons has alleged his conduct is improper and shows a failure to conform to the rules and ideas of the program expected of a unit-based-component graduate. This argument must necessarily fail. Congress defined the term "eligible  prisoner" in § 3621(e)(5)(b). The Bureau of Prisons is authorized to determine if Ross has a substance abuse problem, (e)(5)(b)(i), but that same authority was not given to the Bureau of Prisons to determine Ross's willingness to participate in (e)(5)(b)(ii). It is presumed that Congress not specifying the BOP's authority to determine willingness is both purposeful and intended. Kucana v. Holder, 558 U.S. 233, 249 (SCOTUS 2010). Ross's willingness, then, is demonstrated by his wish or desire to be a member of the program as evidenced

by his prior participation and attempts to be put back into the program.

Therefore, Ross is an eligible prisoner who is being denied treatment from a program of which the law says shall be provided to him. This means that Ross has a liberty interest in this treatment program. A liberty interest can only be interfered with following a due process.

## 2. Regarding Grounds Three And Four

An inmate is entitled to a minimal standard of due process. Wolff v. McDonnell, 418 U.S. 539, 563-576, (SCOTUS 1974).

Ross was never given an Incident Report to serve as an advance written notice of his alleged misconduct. Because Ross was never given an Incident Report, he was also not provided a Unit Disciplinary Committee (UDC) hearing to be sufficiently briefed on the evidence against him. Because there was no UDC hearing, there was no Disciplinary Hearing Officer (DHO) hearing for Ross to call witnesses or present documentary evidence of his own. Ross was immediately expelled upon an allegation that did not    undergo the typical reports and processes of which legitimate misconduct otherwise would have been subject to.

Ross is being denied access to a drug treatment program of which the law says shall be provided to him, and he is being denied as a punishment for allegations that did not undergo a minimal standard of due process.

## A. Urine Surveillance Procedure

"[I]nmates in the RDAP are subjected to the same urine surveillance procedures as the general population." 5330.11 CN-1 § 2.5.7.

> "To eliminate the possibility of diluted or adulterated samples, staff shall keep the inmate under direct visual supervision [] until a complete sample is furnished. ... An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. An inmate may rebut this presumption during the disciplinary process." - 6060.08 CN-1, 28 CFR § 550.31

Ross was selected for a Urine Analysis (UA) test. Ross provided his sample to the conducting officer, and the officer allowed him to leave. 19 days later, Ross is told he refused to provide a sufficient sample, and this alleged refusal was foundational to the Warden's later response that denied administrative relief. Ross was presumed unwilling, per policy, but he was not even given an opportunity to rebut that presumption. Policy says if an inmate is unwilling to provide a sample, staff "must file an incident report" to ensure a disciplinary process. Regulation also states this.

CFR and BOP policy establishes that if an inmate's UA shows a prohibited substance, "staff shall file an incident report." id. Policy further explains that urinalysis is conducted exclusively at an approved lab, and that "[a]n initial positive test is confirmed by a second test before it is reported to the institution."

Ross allegedly tested positive for THC in an initial test, but again, a respective disciplinary process was not invoked in this instance either.

Ross argued to the Regional Office that the local institution

is not an approved lab, meaning their "local positive" cannot carry the weight of a lab confirmed test, but the argument was never addressed.

Ross's initial positive was reported to the institution, specifically the Drug Abuse Program Coordinator (DAPC), without confirmation by a second test, allegedly because Ross failed to provide a sufficient sample for a lab confirmation.

Policy confirms that THC can be detected for 30 days. Ross partook in an additional local UA test 40 hours after the initial positive. The subsequent test came back negative.

Because the institution bypassed all opportunities to invoke the disciplinary process for Ross, he did not get the liberty of refuting the allegations against him with the subsequent negative test.


B. RDAP Procedure

Regulation and policy states that inmates can be removed from RDAP due to "disruptive behavior" or "unsatisfactory progress." 5330.11 CN-1 § 2.5.12(d); 28 CFR 550.53(g). It is further provided that inmates generally must be given one formal warning before removal unless the inmate's failure to comply with the program is so severe that their continued presence is: (1) an immediate problem for staff, (2) an immediate problem for inmates, (3) an ongoing problem for staff, and (4) an ongoing problem for other inmates.

Policy further explains that intervention / formal warnings offer inmates the opportunity to correct their behavior, and a treatment plan is made to assist this goal. 5330.11 CN-1 §

2.5.12(d)(2)(a).  It is further explained that expulsion can
be considered: (1) "in the event [of] repeated treatment interventions",
(2) "the inmate has committed a prohibited act that jeopardizes
the institution and other inmates", or (3) the inmate violates
confidentiality; Expulsion will immediately occur if a disciplinary
proceeding finds the inmate "committed a prohibited act involving
(i) alcohol or drugs; (ii) violence or threats of violence; (iii)
escape or attempted escape; or (iv) Any 100-level series incident."
id at § 2.5.12(d)(2)(b) and (d)(3).

Ross was expelled immediately without formal warning or
intervention because "[1] refusal to provide a sufficient urine
sample and [2] positive urinalysis screen locally [,] is unsatisfactory
progress and not the behavior expected of a graduate of the program."
See Warden's Response.

There was no indication given that Ross's continued presence
in the program would have posed immediate and ongoing problems
with staff and inmates. Therefore, Ross should have been given
an opportunity to address the issue alleged with assistance from
an agreed upon treatment plan. Ross was not given this opportunity.

Ross did not undergo "repeated treatment interventions"
for unsatisfactory progress or behavior. Further, it was never
indicated that Ross's alleged conduct jeopardized the institution
or other inmates. Therefore, Ross should not have been considered
for expulsion.

Since the disciplinary process was not invoked against Ross,
a DHO did not make a finding of a prohibited act that would have
mandated immediate expulsion.

In response to Ross's informal resolution attempt, he was

told that "policy is not exhaustive of reasons for terminating participation in RDAP." This argument fails because a different section of the same policy, § 2.4.8, explicitly indicates where it is not exhaustive, and this language is nowhere in the RDAP policy.

In further responses of denial, Ross was told that his citations of policy subsections indicating discretionary limits are mooted by the overarching header that "inmates may be removed [] by the DAPC because of disruptive behavior [] or unsatisfactory progress[.]" This argument is unpersuasive because it attempts to read lower subsections out of the equation, rendering them useless and ineffective. Only the Non-residential Drug Abuse Treatment Program (NRDAP) policy grants such a broad and unfettered discretion to expulsion by the DAPC. See id at § 2.4.7.

In considering the policy as a whole, Ross's immediate expulsion without a prior warning / intervention is unjustified because it does not comport with policy.


## 3. Conclusion

While an individualized arbitrary or capricious decision to expel Ross may be out of this Honorable Court's jurisdiction for review, the issue Ross presents goes beyond that.

Ross's circumstance is the result of BOP policy and regulation that has not only permitted discretionary expulsion, but also assigned discretion to readmittance. In tandem, this rule has given authority to BOP officials to take away an eligible prisoner's statutorily mandated right to be provided specific treatment without any safeguards of due process.

Ross, Pro Se, asks this Honorable Court to duly consider if this is unlawful or unconstitutional. This Honorable Court has the authority to consider if the BOP's interpretation of a statute is a permissible reading of the text. See Reno v. Koray, 515 U.S. 50, 62 (SCOTUS 1995). Further, this circuit agrees with the position Ross is aligning with, "the word 'shall' bestows a duty on the BOP." Elwood v. Warden, FCI Forrest City, 386 F.3d 842, 847 (8th Cir. 2004) (reversed and remanded).

For Ross, this error has allowed FCC Forrest City Low to punish him substantially off of mere unconfirmed allegations in a process tainted with policy violations by the institution, as opposed to a reliable finding of guilt through a disciplinary process that would have ensured a minimal standard of due process.

This is arbitrary, capricious, and an abuse of discretion. Ross has been treated in a manner to which policy confirms is not how inmates are ordinarily and equally treated. The responses given to Ross may allow the inference that his treatment was targeted due to his status as a unit-based-component graduate.

This unfortunate circumstance potentially affects Ross's sentence. His continuation in the program would offer him the opportunity for completion, and that completion would grant him consideration for a sentence reduction, 18 U.S.C. § (e)(2)(B). Further, Ross's continuation in the program would have placed him in appropriate aftercare, as defined in § (e)(5)(C), that the BOP also has the duty to make arrangements for, (e)(1). The BOP calls this aftercare Transitional Drug Abuse Treatment (TDAT), and were Ross's right to this care not interfered with arbitrarily, he would be in a Community Correctional Center receiving this

care right now. Ross was slated for this transfer on March 9, 2023.

## 4. Relief Requested

Given the foregoing reasons, petitioner Nicholas Alexander Ross, Pro Se, respectfully asks this Honorable Court for the following relief:

A.  Order Ross's expulsion from the RDAP to be reversed and order that he be reinstated to the very point of progress in the program before his expulsion so that he may attend TDAT in a Community Correctional Center.

B.  Should this Honorable Court see fit, issue the aforementioned order immediately as a preliminary injunction so that Ross's protected interest may be retained as this matter proceeds through the judicial process.

/s/ Nicholas Ross

On this day of: 8/3/2023

Nicholas Ross #32813-045
FCC Forrest City Low
P.O. Box 9000
Forrest City, AR 72336

# DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, **Administrative Remedy Program**, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate=s Name: Nicholas Ross                    Date: 12/05/2022

Register Number: 32813-045              Unit: M-A

Specific Complaint and Requested Relief: I was expelled from RDAP for an alleged positive UA. I request reinstatement to RDAP. In accordance with program statement 550.53(g)(3) inmates will be removed from RDAP immediately if the Discipline Hearing Officer (DHO) finds that they have committed a prohibited act involving: (i) Alcohol or drugs. There was no disciplinary report or DHO hearing in my case. Per policy, I was expelled from RDAP incorrectly. At this point I am not even certain there was a positive UA, because I was never even shown a lab result.

Efforts Made By Inmate to Informally Resolve Grievance (be specific):

Counselor=s Comments: *Policy is not exhaustive of reasons for terminating participation in RDAP. You tested positive for an illegal substance locally, per SIS.*

Correctional Counselor=s Review Date          12-6-22

Unit Manger=s Review Date          12/6/22

DATE BP-9 was ISSUED

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Ross, Nicholas A.**                **32813-045**          **M-A**          **For-Low**
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** I was expelled from RDAP for an alleged positive UA, a result I strongly insist is a false positive. This test was never sent to lab for analysis. Therefore, there was never a verifiable confirmation that the sample was in fact positive. Furthermore, I tested negative on a UA 40 hours later. This casts further doubt on the local positive test. I request reinstatement to RDAP with a return to my status as RDAP Complete as well as the 3621e release I earned. 550.53(g) Expulsion from RDAP. In accordance with Psychology Treatment program statement 550.53(g)(3) inmates will be removed from RDAP immediately if DHO finds that they have committed a prohibited act involving: (i) Alcohol or drugs. This is the policy that specifically addresses what is to be done if an inmate gets an alleged positive UA while participating in RDAP. It is my position that the UA should have been sent off for lab testing, and if positive I should have been charged by disciplinary report and given an opportunity to challenge the result at hearing. Then, if I were found guilty by the DHO I would be expelled at THAT time from RDAP. This process was totally skipped in my case. There was no disciplinary report or DHO hearing. Per policy, I was incorrectly expelled from RDAP.
The response says "policy is not exhaustive of reasons for terminating participation in RDAP." I understand the BOP runs exclusively by policy.

12/06/2022
| DATE | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**          CASE NUMBER: _1144111-F1_

CASE NUMBER: _____

**Part C- RECEIPT**
Return to: _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

USP LVN

BP-229(13)
APRIL 1982

FEDERAL CORRECTIONAL COMPLEX (LOW), FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1145749-F1)

This is in response to your Administrative Remedy received on December 7, 2022. You alleged you were expelled from RDAP without proper procedure or adherence to policy.

For relief, you request to be reinstated into RDAP, including reinstatement of your 3621(e) eligibility.

On November 17, 2022, you met with the RDAP Treatment Team to discuss a recent drug test after you submitted a urinalysis sample that tested positive for marijuana at the institution. After you submitted your specimen that tested positive, SIS was notified. Because you did not submit a large enough specimen, the sample was not sent to the lab for further analysis. At that time, you should have received an incident report for failing to produce an appropriate specimen (a 100-series incident report) and been placed in SHU. The lack of an incident report for your rule violation does not preclude the RDAP Treatment Team from addressing your behavior, so the Treatment Team met with you and decided to expel you. Drug use and failing to produce a sufficient urine specimen is NOT appropriate behavior for an RDAP graduate.

You allege that policy indicates that the RDAP Treatment Team can only expel an inmate who has been found guilty by the DHO. This is incorrect. Program Statement 5330.11 Section 2.5.12 d(1)states:

"Inmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment."

Policy does not provide a specific list of infractions related to expulsion because RDAP is a treatment program based on clinical intervention. Program Statement 5330.11 Section 2.5.12 d(2)b is entitled Circumstances for Expulsion and states:

"In the event repeated treatment interventions are required in response to inappropriate behaviors **or unsatisfactory progress** the treatment team will meet to decide if the inmate will be removed from the program."

The section of policy you quoted is an additional section in Circumstances for Expulsion that delineates the RDAP Treatment Team's response if and when an RDAP participate is found guilty by the DHO. The policy section does not indicate that being found guilty by the DHO is the only justifiable reason for expulsion. In fact, the two sections of policy referenced above indicate that the RDAP Treatment Team may intervene (to include expulsion) for "unsatisfactory progress."

Your refusal to provide a sufficient urine sample and positive

urinalysis screen locally is unsatisfactory progress and not the
behavior expected of a graduate of the program.

Based on the above, this response to your Administrative Remedy is for
informational purposes only. You are not being readmitted into RDAP or
having your 3621(e) eligibility restored.

If you are not satisfied with this decision, you may appeal to the
Regional Director at Federal Bureau of Prisons, South Central Regional
Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051.  Your
appeal must be received in the South Central Regional Office within 20
days of this response.


_____                    _____
John P. Yates, Complex Warden                       Date  1/6/23

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

· Federal Bureau of Prisons

---

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Ross, Nicholas A. | 32813-045 | M-A | For-Low |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

I am appealing the warden's response to my BP-9, where he alleges that I simultaneously refused and tested positive on a UA, which is factually impossible. He also end runs around my improper expulsion by pivoting to "unsatisfactory progress." My appeal rests on 2 interrelated claims: 1. The institution failed to follow the proper procedures mandated by Program Statement 6060.08 (Urine Surveillance), which led to 2. My improper expulsion from RDAP.

Program Statement 6060.08 states "if an inmate is unwilling to provide a urine sample within two hours...staff must file an incident report." I was first notified of this alleged specimen insufficiency on 11/29, 19 days after the sample was collected, and only after I had begun to make inquiries into my test. I am certain I provided the required 60cc, and was not told otherwise by the urine collection officer. This is obviously an excuse used to justify why my sample was discarded instead of being sent to lab as procedure requires.

Program Statement 6060.08 further states "Urinalysis will be performed exclusively by a Central Office-approved laboratory." Forrest City Low is NOT an authorized laboratory. The only role it plays in the urine surveillance program is by serving as the site of urine collection. The institution's use of the term "local positive" is purposefully misleading, assigning authority to the instant test that is not merited. Without lab confirmation, the instant test results (continued on attached sheet)

| 01/18/2023 | [signature] |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

RECEIVED

JAN 2 3 2023

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 1144111-R1

---

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____

| USP LVN | DATE | Previous editions not usable | SIGNATURE, RECIPIENT OF REGIONAL APPEAL | BP–230(13) APRIL 1982 |
|---|---|---|---|---|

(BP-10 continuation sheet)

are not actionable.

The warden's claim of "unsatisfactory progress" is an attempt to bypass the fact that I was denied a DHO hearing. The situation is explicitly covered in Program Statement 5330.11 Section 2.5.12(d)(3) and requires DHO to find I committed a prohibited act. Circumstances for expulsion not covered by this subsection require a formal warning and treatment intervention targeting the problematic behavior. I was given no formal warning and no treatment intervention prior to expulsion.

Finally, the RDAP Treatment Team failed to ensure they were basing their decision on a valid UA: i.e. one conducted at a Central Office-approved laboratory and confirmed by two different testing methods, which is the procedure spelled out for RDAP participants in Program Statement 5330.11, Section 2.5.7. Urine Surveillance. Instead, SIS reported the positive on the instant test to the DAPC, who proceeded with expulsion on that evidence alone. I was not found guilty of a prohibited act by DHO. This circumstance deprived me of the opportunity to refute the result through laboratory analysis, because the institution destroyed the evidence in question. Given that I had NOT been using drugs, the lab test would have validated my claim.

This institution failed to follow BOP regulations regarding Urine Collection and RDAP expulsion, depriving me of due process as a result. For relief, I request to be re-instated to RDAP, with a return of my status as RDAP Complete and the return of my 3621(e) release.

Regional Administrative Remedy Appeal No. 1144111-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted on January 20, 2023.  You are appealing the
Warden's response to your request in which you request to be
placed back into the Residential Drug Abuse Program (RDAP).

A review of your case and file information reveals treatment
staff met with you and informed you of the reasons for expelling
you from RDAP at this time.  RDAP is a behavioral program in
which participants are encouraged and expected to make
behavioral changes, including a willingness to abide by RDAP
rules and norms and to step out of your comfort level in order
to make lasting behavioral and clinical progress.

Based on the above information, your appeal is denied.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel within 30 days
from the date of this response.

APR 2 8 2023

_____          _____
Date                         Heriberto H. Tellez
                             Regional Director

NICHOLAS ALEXANDE ROSS, 32813-045
FORREST CITY FCI    UNT: 2 GP    QTR: M03-141U
P.O. BOX 7000
FORREST CITY,  AR 72336



**Administrative Remedy Number 1144111-A2**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal wherein you challenge your removal from the Residential
Drug Abuse Program (RDAP).  You contend there was no basis for
your removal from the program, as you were never issued an
incident report for a positive urinalysis.  You request
reinstatement into the RDAP and updated to your sentence
computation to reflect the 3621(e) release date.

The Warden and Regional Director adequately addressed the issues
raised in your appeal and we concur with the responses you were
provided.  Records reflect you were removed from the RDAP based
on testing positive for illegal substances.  Your case was
reviewed pursuant to Program Statement 5330.11, CN-1, Psychology
Treatment Programs, and there is no indication your removal was
not justified.  We find RDAP staff properly exercised discretion
in this matter and there is no reason to overturn this decision.

Considering the foregoing, your request is denied.




June 13, 2023
Date

*A. Connors*
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **Ross, Nicholas A.**              **32813-045**        **M-A**         **For-Low**
     LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT            INSTITUTION

**Part A—REASON FOR APPEAL** This is a resubmission for a rejected BP-11 submitted on 4/20.

    I am appealing to the General Counsel because the Regional Director's boilerplate response does not address any of the arguments I made in my BP-10, and contains no evidence that my appeal was read before being denied. The South Central Regional Office sat on my BP-10 for 95 days, well in excess of the 30 days (60 days with extension) stated in sec. 12 of Program Statement (PS) 1330.18, and failed to provide a serious and considered response to my grievance.

    On 11/17 I was wrongfully expelled from RDAP, resulting in a loss of my 3621(e) release, my 3/9 halfway house date, and my TDAT continuing treatment. At the time of my expulsion I was a Complete in follow-up with exemplary conduct in the program and had never received a formal warning. The discharge document stated I had "tested positive for illegal substance on UA." This is FALSE. At that time I had been clean for several years already and was dedicated to maintaining my sobriety. My wrongful expulsion is a direct result of the institution and the DAPC failing to adhere to BOP policy and procedures.

    In the Warden's response to my BP-9, he alleges I simultaneously refused AND tested positive on a UA, which is factually impossible. He also end runs around my improper expulsion by pivoting to "unsatisfactory progress". My appeal rests on 2 interrelated claims:

(continued on attached sheet)

05/15/2023
_____                          _____
DATE                                              SIGNATURE OF REQUESTER

**Part B—RESPONSE**

MAY 25 2023

_____
DATE
**ORIGINAL: RETURN TO INMATE**

GENERAL COUNSEL

CASE NUMBER: 1144111-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT            INSTITUTION
SUBJECT: _____

_____                          _____
DATE                                              SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

(continuation sheet for BP-11)

1. The institution failed to follow the proper procedures mandated by (PS) 6060.08 (Urine Surveillance), which led to 2. My improper expulsion from RDAP.

   (PS) 6060.08, sec. 9(a) states "if an inmate is unwilling to provide a urine sample within two hours...staff must file an incident report." I was first notified of this alleged specimen insufficiency on 11/29, 19 days after the sample was collected, and only after I had begun to make inquiries into my test. I am certain I provided the required 60cc, and crucially, was not told otherwise by the urine collection officer whose very job it is to ensure a "complete sample is furnished." Had there actually been a problem with the specimen collected on 11/10, the institution had an opportunity to remedy this by using the specimen collected 40 hours later, on 11/12. In that UA, the cup showed a negative result and the officer discarded the sample.

   (PS) 6060.08, sec. 9(c) states "Urinalysis will be performed exclusively by a Central Office-approved laboratory." Forrest City Low is not an authorized laboratory. The only role it plays in the urine surveillance program is to serve as the site of urine collection. The institution's use of the term "local positive" is misleading, assigning authority to the instant test that is not merited. Without lab confirmation, the instant test results are not actionable, and do not constitute evidence of drug use. By this logic, urinalysis was not performed on my specimen and any decision made based on the local result is erroneous.

   The Warden's claim of "unsatisfactory progress" is an attempt to bypass the fact that I did not receive a DHO hearing. The situation is explicitly covered in (PS) 5330.11, sec. 2.5.12(d)(3) and requires DHO to find I committed a prohibited act. Circumstances for expulsion not covered by this subsection require a formal warning and treatment intervention targeting the problematic behavior. I was given no formal warning and no treatment intervention prior to expulsion. A local test result, absent lab confirmation, is not sufficient evidence for DHO. Therefore, my situation does not meet the standard for expulsion under either subsection (2)b or subsection 3 of (PS) 5330.11, sec. 2.5.12(d).

   Finally, the RDAP Treatment Team failed to ensure they were basing their decision on a valid UA: i.e. one conducted at a Central Office-approved laboratory and confirmed by two different testing methods. This is the procedure spelled out for RDAP participants in (PS) 5330.11, sec. 2.5.7. Urine Surveillance: "inmates in the RDAP are subjected to the same urine surveillance procedures as the general population." Instead, SIS reported the alleged positive on the instant test to the DAPC, who proceeded with expulsion on that evidence alone. This is despite the fact that I was not found guilty of a prohibited act by DHO, and that said "evidence" did not meet the standard for receiving an incident report. I was deprived of the opportunity to refute the false positive result through laboratory analysis, because the institution destroyed the evidence in question.

   This institution failed to follow BOP regulations regarding Urine Collection and RDAP expulsion, an error that has resulted in me missing my halfway house date by 67 days and counting. For relief, I request to be reinstated to RDAP, with a return of my RDAP Complete status and the return of my 3621(e) release.

TRULINCS  32813045 - ROSS, NICHOLAS ALEXANDE - Unit: FOR-M-A

---------------------------------------------------------------------------------------------

FROM: Low DAP Coordinator
TO: 32813045
SUBJECT: RE:***Inmate to Staff Message***
DATE: 11/18/2022 09:02:02 AM

You tested positive on the UA test you took here locally. I was contacted by SIS. That is my involvement on the testing side (minimal at best).

---

From: ~^! ROSS, ~^!NICHOLAS ALEXANDE <32813045@inmatemessage.com>
Sent: Thursday, November 17, 2022 10:46 PM
To: FOR-InmateToDAPCoordinator (BOP) >
Subject: ***Request to Staff*** ROSS, NICHOLAS, Reg# 32813045, FOR-H-B

To: Dr. Owen
Inmate Work Assignment: HB Orderly

I am still reeling emotionally from today's team. I maintain that I am clean and have been so for over 2 years now. So I must conclude that the test was faulty. I do intend to file on this, because a year of my life is priceless to me.

In the midst of my panic, I neglected to ask necessary questions about the positive UA. Has it been confirmed at the lab? Is there paperwork attesting to this?

It was deeply unpleasant for me to be in a room where authority figures whom I admire refused to believe me when I told the truth. If you had told me what I supposedly tested positive for, I would have been tempted to falsely admit to using, because I knew that's what you wanted to hear. Thank you for sparing me that, at least.

TRULINCS  32813045 - ROSS, NICHOLAS ALEXANDE - Unit: FOR-M-A

---------------------------------------------------------------------------------------------------------------

FROM: 32813045
TO: Low Correctional Services
SUBJECT: ***Request to Staff*** ROSS, NICHOLAS, Reg# 32813045, FOR-M-B
DATE: 11/25/2022 09:29:39 AM

To: Glasgow
Inmate Work Assignment: HB Orderly

On Thursday, Nov 10 I had a UA that apparently showed positive for an illicit substance. I saw Mr. Pike tape and bag this
sample, and I expect it got sent off to the lab for confirmation. I had a second UA 2 days later, on Saturday morning. I did not
ask to see the result, but since it got thrown in the trash, I assume this test was negative.

I took these UAs with full confidence that I would test negative, because it has been more than 2 years since I used anything. I
learned of the positive test last Thursday (Nov 17) when the RDAP treatment team brought me in and confronted me about my
supposed drug use. I could do nothing but deny using, in spite of the positive test. As a result I was expelled from RDAP, and
my year off was taken away.

At this point my aim is to acquit myself and reverse the RDAP fail status I was given. I would like to confirm that the first UA was
in fact sent to lab, and be notified when it comes back negative. If there is any ambiguity about the test, or if it were destroyed
instead of sent to lab, I would like to know if there are other options for clearing myself. I would be more than happy to submit to
a follicle test, for example.

Thank you for your assistance.

TRULINCS  32813045 - ROSS, NICHOLAS ALEXANDE - Unit: FOR-M-A

--------------------------------------------------------------------------------------------------

FROM: Low DAP Coordinator
TO: 32813045
SUBJECT: RE:***Inmate to Staff Message***
DATE: 11/29/2022 11:12:02 AM

Per policy, you can reapply after 90 days. I have spoken with SIS numerous times, and you had a positive test locally. Moreover, you should have been placed in SHU for failing to produce a sufficient sample (violoation of code 110).

From: ~^! ROSS, ~^!NICHOLAS ALEXANDE <32813045@inmatemessage.com>
Sent: Tuesday, November 29, 2022 4:35 PM
To: FOR-InmateToDAPCoordinator (BOP) >
Subject: ***Request to Staff*** ROSS, NICHOLAS, Reg# 32813045, FOR-M-A

To: Dr. Owen
Inmate Work Assignment: HB Orderly

I just heard that they did not send my test off to the lab because they said the sample was insufficient and would come back inconclusive. I was waiting for the lab to come back to prove that I am negative. Since that is not possible, I would like to be retested, by hair follicle if necessary. I have been clean for 2 years now and remain clean. I cannot bear having my date pulled for drugs that I did not do.

## TRULINCS 32813045 - ROSS, NICHOLAS ALEXANDE - Unit: FOR-M-A

--------------------------------------------------------------------------------------------------------------

FROM: 32813045
TO: Marianna Unit Team
SUBJECT: ***Request to Staff*** ROSS, NICHOLAS, Reg# 32813045, FOR-M-A
DATE: 11/30/2022 08:22:38 PM

To: SIS
Inmate Work Assignment: HB Orderly

Yesterday Counselor Hagler informed me that the UA I took on Nov 10 was not sent to the lab for verification. The reason he told me is that the sample is insufficient for lab testing, and would come back inconclusive.

I am confused by this because I am quite confident I filled the cup above the line. Furthermore, Mr. Pike, the officer conducting the UA, made no mention to me of any need to provide additional urine. I am well aware that failure to provide a sufficient sample is grounds for an incident report and even time in the SHU.

I had a follow-up UA on the morning of Nov 12 that was thrown in the trash by the officer. As it was discarded, I understand this to mean that this UA did NOT show positive on the cup. I am concerned that this negative test is not considered equally credible to the positive test taken approximately 40 hours prior.

I have faced significant negative consequences as a result of the false positive test. Such consequences include expulsion from RDAP, loss of the year off that I earned, and the loss of my halfway house date.

I seek to establish the truth that I have been living a drug-free lifestyle, and have my status in RDAP restored. Since I can no longer expect vindication from a lab test of this false positive UA, I urgently request to be retested and to have the new test lab-verified.

Thank you for your assistance!

# Program
# Statement

OPI:  RSD/PSB

NUMBER:  5330.11, CN-1

DATE:  April 25, 2016

RULES EFFECTIVE DATE: May 26, 2016

## Psychology Treatment Programs

### 2.4. Non-residential Drug Abuse Treatment Programs

**2.4.7.  Expulsion.**  Inmates may be removed from the program by the DAPC because of disruptive behavior related to the program or unsatisfactory progress in treatment.

### 2.5.  § 550.53  Residential Drug Abuse Treatment Program  (RDAP).

**2.5.7.  Urine Surveillance.**  Urine surveillance is a regular component of effective treatment programming.  Urine surveillance provides information to staff on an RDAP participant's abstinence, coping mechanisms, and honesty.  The Bureau's urine surveillance procedures allow for random testing, suspect testing, and testing after returning from a furlough.  Therefore, inmates in the RDAP are subjected to the same urine surveillance procedures as the general population.

On rare occasions there may be a clinical reason to test individual program participants or the entire population of the program.  On these infrequent occasions, and with the permission of the Regional Psychology Programs Coordinator, staff may use program funds for urinalysis testing.  However, this is to be an extremely rare event and is the only situation where Drug Abuse Program funds may be used for urinalysis testing.

**2.5.12.  Program Outcomes.** How an inmate leaves a RDAP is based on the inmate's behavior.

**(d) Intervention and § 550.53(g)** ***Expulsion from RDAP.***

**(1) Inmates may be removed from the program by the Drug Abuse Program**

progstat                                                     1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment.**

**(2)  Ordinarily, inmates must be given at least one formal warning before removal from RDAP.  A formal warning is not necessary when the documented lack of**

**compliance with program standards is of such magnitude that an inmate's continued presence would create an immediate and ongoing problem for staff and other inmates.**

(a) **Circumstances for an Intervention.** Ordinarily, staff will provide the inmate with at least one treatment intervention prior to removal. However, in response to disruptive behavior or unsatisfactory progress, treatment staff will:

- Meet with the inmate to discuss his or her behavior or lack of progress.

- Assign the treatment intervention(s) chosen to reduce or eliminate the behavior, or to improve

progress.

- Warn the inmate of the consequences of failure to alter his/her behavior.

- Properly document in PDS the meeting and treatment intervention(s) assigned.

- Properly document in PDS changes to the inmate's treatment plan, and ensure that both staff and the inmate sign the amended treatment plan.

- When appropriate, require the inmate to discuss his or her targeted behavior in the community.

(b) **Circumstances for Expulsion.**  In the event repeated treatment interventions are required in response to inappropriate behaviors or unsatisfactory progress the treatment team will meet to decide if the inmate will be removed from the program.

Within two working days after a decision has been made to expel an inmate, the DAPC will:

- Verbally notify the inmate of his/her expulsion status.

- Notify the inmate and appropriate staff in writing of the reason for expulsion through the

*Change in RDAP and § 3621(e) Status* form.

- Update the pertinent SENTRY DRG assignments.

- Ensure proper documentation of the expulsion has been entered into PDS.

progstat                                                     2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

17061509

An inmate may not ordinarily be removed immediately by the DAPC without a treatment intervention unless the inmate has committed a prohibited act that jeopardizes the institution and other inmates.

**(3) § 550.53(g)(3) Inmates will be removed from RDAP immediately if the Discipline Hearing Officer (DHO) finds that they have committed a prohibited act involving:**

**(i)  Alcohol or drugs;**

**(ii)  Violence or threats of violence; (iii)  Escape or attempted escape; or (iv) Any 100-level series incident.**

An inmate may also be expelled from the program without a formal intervention if the inmate is determined to have violated confidentiality.

**2.5.14.  Re-application to the RDAP.**  An inmate who  previously declined, withdrew, or failed RDAP may reapply for readmission to the program after 90 days through an *Inmate Request to Staff* form to the DAPC.  The treatment team, in consultation *when appropriate* with the unit team, will decide on readmission.  Considerations may include the inmate's participation in the NR DAP program or DRUG ED, at the discretion of the DAPC.  The DAPC will provide the treatment team's decision to the inmate in person and in writing.  If readmitted to the same or to a different RDAP, the inmate will not receive any credit for prior treatment participation.

progstat                                              3

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**OPI:**          **CPD**
**NUMBER:**   **6060.08**
**DATE:**        **11/24/99**
**SUBJECT:**   <u>**Urine Surveillance**</u> **and Narcotic Identification**

| | |
|---|---|
| **DIRECTIVE AFFECTED:** | 6060.08 |
| **CHANGE NOTICE NUMBER:** | 1 |

**DATE:**   3/8/2001

9. [<u>PROCEDURES</u>      §550:31

   a. **Staff of the same sex as the inmate tested shall directly supervise the giving of the urine sample.  If an inmate is unwilling to provide a urine sample within two hours of a request for it, staff**

**must file an incident report. No waiting period or extra time need be allowed for an inmate who directly and specifically refuses to provide a urine sample. To eliminate the possibility of diluted or**

**adulterated samples, staff shall keep the inmate under direct visual supervision during this two-hour period, or until a complete sample is furnished. To assist the inmate in giving the sample, staff shall offer the inmate eight ounces of water at the beginning of the**

**two-hour time period. An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. An inmate may rebut this presumption during the disciplinary process.]**

   [b. **Institution staff shall determine whether a justifiable**

progstat                              1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

17187045

reason exists, (e.g., use of prescribed medication) for any positive urine test result. If the inmate's urine test shows a positive test result for the presence of drugs which cannot be justified, staff shall file an incident report.]

Incident reports pertaining to positive urine tests will be forwarded to the Unit Discipline Committee, in accordance with the Program Statement on Inmate Discipline and Special Housing Units.

An inmate who has been found to have committed any of the following prohibited acts will be tested monthly for the following 24 months:

e Refusing to Provide a Urine Sample, Code 110;

e Introduction of Drugs or Drug Paraphernalia, Code 111;

e Use of Drugs or Related Paraphernalia, Code 112; or

e Possession of Drugs or Related Paraphernalia, 113.

c. Urine Sample Screening and Confirmation. Urinalysis will be performed exclusively by a Central Office-approved laboratory.

An initial positive test is confirmed by a second test before it is reported to the institution.

STANDARD PROCEDURES FOR COLLECTING URINE SURVEILLANCE SAMPLES

9. When a positive result is received, and an incident report written, a photocopy of both the slip returned by the lab and the slip listing the inmate's name and urine sample identification number (retained at the institution) will be attached to the incident report and made a part of the disciplinary record.

DETECTION PERIODS FOR SELECTED DRUGS

30 days    THC

progstat                          2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

17187045